THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:09-CV-137-FL

DESMOND C. ROLLINSON,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　Plaintiff/Claimant,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　)　　**MEMORANDUM AND**
　　　　　　　　　　　　　　　　　　)　　**RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner　)
of Social Security,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　Defendant.　　　　　　　　　　　)

　　　　This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Desmond Rollinson ("Claimant") filed this action pursuant to 42 U.S.C. §1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## <u>STATEMENT OF THE CASE</u>

　　　　Claimant filed an application for SSI on 31 January 2006, alleging disability beginning 18 July 2002. (R. 4, 256) [DE-15, DE-25]. His claim was denied initially and upon reconsideration. (R. 202, 206) [DE-23]. A hearing before the Administrative Law Judge ("ALJ") was held on 16 June 2008, at which Claiman t was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 113-37) [DE-19]. On 22 September 2008, the ALJ issued a decision denying Claimant's request for benefits. (R. 102-12) [DE-19]. On 10

July 2009, the Appeals Council issued a decision upholding the ALJ's determination that Claimant was not disabled. (R. 1-10) [DE-14]. Claimant timely commenced the instant action for judicial review of the Appeals Council's final decision.[1] (R. 1-10) [DE-15].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

---

[1] Social Security Administration ("SSA") regulations provide that a final agency decision is reached when the Appeals Council grants review of a claim and issues a decision. *See* 20 C.F.R. §§ 416.1400(a)(4)-(5), 416.1455(a), 416.1481, 422.210(a).

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the Commissioner is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the [Commissioner] need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the Commissioner must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The Commissioner is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(2).

3

In this case, Claimant alleges the following errors by the Appeals Council:[2] (1) failure to classify Claimant's organic brain syndrome and memory impairment as severe impairments; (2) failure to consider whether Claimant's impairments meet or equal Listing 12.02; (3) failure to prove Claimant can perform other work; and (4) improper reliance on the opinion of a non-examining physician. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 10-11, 15, 17. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.     Appeal Council's Findings

Applying the above-described sequential evaluation process, the Appeals Council adopted the ALJ's determination that Claimant was "not disabled" as defined in the Act. (R. 4) [DE-15]. At step one, the Appeals Council agreed with the ALJ's finding that Claimant was no longer engaged in substantial gainful employment. *Id.* Next, the Appeals Council adopted the ALJ's findings that Claimant had borderline intellectual functioning, a severe impairment, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 4, 8). The Appeals Council observed, however, that the ALJ's decision did not contain an assessment of Claimant's mental impairment employing the "special technique" prescribed by the regulations. *Id.* Performing the required analysis, the Appeals Council determined Claimant's mental impairment caused a mild degree of limitation in activities of daily living, a moderate degree of limitation in maintaining social functioning, a moderate degree of limitation in maintaining concentration,

---

[2] Throughout his memorandum, Claimant alleges errors by the ALJ. However, as explained above, the Appeals Council's decision is the Commissioner's final decision and is accordingly the decision before this Court for judicial review. *See* 20 C.F.R. §§ 416.1481, 422.210(a).

4

persistence and pace and no episodes of decompensation. (R. 5). Consistent with the ALJ's decision, the Appeals Council determined Claimant retained the RFC to perform unskilled work at any level, had no past relevant work and is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 8) [DE-15].

## II.  Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 29 years old and unemployed. (R. 116) [DE-19]. Claimant attained an eighth grade education and participated in regular and special education classes. (R. 116). Claimant performed limited part-time work in the past, such as landscaping and picking up trash, but has never held a full-time position. (R. 117).

Claimant has never lived on his own and in fact, with the exception of living with his girlfriend for short, intermittent periods of time not exceeding four months, has always resided with his mother. (R. 120, 122-23). Claimant explained that he and his girlfriend had difficulty living together because Claimant was incapable of paying bills and often forgot to perform household chores. (R. 125). Claimant testified to staying home most of the time because he felt uncomfortable and nervous around people. (R. 120). Claimant spends his day watching television, visiting the park, taking out the trash, cleaning his room and with the assistance of Claimant's mother or grandmother, caring for his young daughter. (R. 119, 125-26). Claimant testified that he could probably perform the requirements of a "janitorial type position," but was not certain as he had never attempted this type of work. (R. 124). Claimant does not have a driver's license. (R. 126). Testimony was not elicited as to Claimant's impairments.

## III. Vocational Expert's Testimony at the Administrative Hearing

Sondra Henry testified as a VE at the administrative hearing. (R. 132-36). The ALJ posed the following hypothetical:

> Assume I find the Claimant is 29 years old and has an eighth grade education and some special ed[ucation], I might find he has no exertional limitations. And assume I find based on his educational background and the - his IQ testing that would be limited to performing unskilled work . . . just with that limitation would there be any jobs available that he could perform.

(R. 133). VE testified the individual could perform the following jobs: (1) grocery bagger - DOT #920.687-014, 2,800 locally, 87,000 nationally; (2) laundry worker - medium duty, DOT #361.684-014, 5,190 locally, 231,300 nationally; and (3) bander - light duty, DOT #920.687-426,[3] 7,390 locally, 183,980 nationally. (R. 133-34). Next, the ALJ asked the VE to assume

> the same elements as in the first hypothetical except in addition I would find that he would have a substantial loss of ability to understand, remember and carry out simply instructions. With that additional limitation could he perform any of the jobs identified or if not would there be other jobs he could perform?

(R. 133). The VE testified that hypothetical individual could perform the jobs of grocery bagger and bander. (R. 134). The ALJ then asked the VE to

> [a]ssume the same elements as the first and second hypothetical except [to assume the individual] would have concentration deficits which would result in loss of productivity of 25 percent. With that degree of loss of productivity could he perform either the grocery bagger or the bander or if not any other jobs?

(R. 134). The VE testified in the negative. *Id.* In response to a question posed by Claimant's counsel, the VE testified Claimant would not be capable of performing work if he could not perform simple one- and two-step operations. (R. 135).

---

[3] The DOT does not contain an entry for code number 920.687-426. The Appeals Council's decision indicates the proper code is DOT # 920.687-026. (R. 5).

**I.      The Appeal's Council properly found that Claimant's organic brain syndrome and memory impairment were not severe impairments.**

Claimant contends the Commissioner erred in failing to make "a specific finding as to claimant's memory impairments or organic brain syndrome." Pl.'s Mem. at 10. In support of his argument, Claimant relies upon the neuropsychological testing and medical opinions of Antonio Puente, Ph.D, and a 1993 decision by ALJ Robert E. Joyner ("ALJ Joyner") awarding Claimant childhood disability benefits. *Id.*

In a neurobehavioral status examination performed on 8 May 2006, Dr. Puente concluded that Claimant suffers from organic brain syndrome. (R. 34) [DE-16]. Dr. Puente explained in a declaration dated 28 December 2007 that Claimant's "organic mental disorder, particularly his memory impairment and difficulties with maintaining concentration, persistence or pace, is probably [the] result of the fact that . . . when [Claimant] was a child there was significant organicity *secondary to poison exposure*." (R. 346 ¶ 10) [DE-27] (emphasis added). Dr. Puente first commented on Claimant's mental impairment in a report dated 14 August 1993, in which he stated that Claimant "has underlying organic deficit probably to (sic) secondary to his poisoning at age 3." (R. 38). On 21 October 1993, ALJ Joyner rendered a fully favorable decision, finding Claimant suffered from organic mental disorder, the severity of which met the requirements of Listing 112.02 (childhood listing for organic brain syndrome). (R. 144-52) [DE-20]. In making this decision, ALJ Joyner relied at least in part on Dr. Puente's 14 August 1993 report, noting in particular Dr. Puente's opinion that "the claimant had an underlying organic deficit probably secondary to claimant's poisoning at the age of 3." (R. 6, 148-149).

7

The Appeals Council discussed Dr. Puente's reports and declarations and acknowledged the decision by ALJ Joyner. (R. 5-6). The Appeals Council noted, however, evidence contradicting Dr. Puente's belief that Claimant experienced organic brain damage probably as a result of childhood poisoning. (R. 6). In particular, the Appeals Council referenced a medical record from New Hanover Memorial Hospital indicating that Claimant had ingested Campho-Phenique on 5 January 1980 when Claimant was approximately 15 months old. (R. 6, 163). The medical record indicates that Claimant was admitted for overnight observation; however, Claimant showed no signs of poisoning, his physical exam was "normal," and he was discharged on no medications. (R. 163) [DE-20]. Indeed, the administrative record contains no objective evidence of poisoning. Finding that Dr. Puente's opinion is "not consistent with the record as a whole because it is based on a *false premise that the claimant experienced poisoning as a child which caused organic brain damage*," the Appeals Council concluded that Dr. Puente's opinion is not supported by substantial evidence. (R. 7) (emphasis added). The Appeals Council stated further that "the record in its entirety raises significant doubts as to whether the weight afforded to Dr. Puente's opinion in ALJ Joyner's decision . . . and ALJ Joyner's ultimate finding that the claimant suffered from organic brain damage (and thus met listing 112.02) are supported by the current evidence of record." (R. 6).

In so finding, the Appeals Council acknowledged the recent opinions of Karen L. Campbell, Ph.D., an examining state agency consultant, and Eleanor E. Cruise, Ph.D., a non-examining state agency consultant, as well as the opinion of consultative examiner Peter J. Boyle, Ph.D., rendered when Claimant was a child. (R. 5-6). Upon examination of Claimant, Dr. Campbell noted that Claimant "test[ed] consistently in [b]orderline range of intellectual

ability," can perform routine tasks but may need "some supervision," and has "adequate short-term auditory memory skills." (R. 5, 321). In reviewing the evidence of record, Dr. Cruise concluded Claimant was capable of simple, routine and repetitive tasks and noted in particular that Claimant was able to remember simple instructions. (R. 325). In completing the Psychiatric Review Technique form, Dr. Cruise assessed Claimant as suffering from borderline intellectual functioning and concluded the Claimant has moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. 331). With respect to Dr. Boyle's opinion, the Appeals Council noted Dr. Boyle's finding that Claimant's "data [as of 1993] did not suggest the functioning associated with organic brain syndrome." (R. 6, 147). Accordingly, the Appeals Council concluded properly that the record, when considered in its entirety, did not support Claimant's allegation that he suffered from organic brain syndrome. (R. 319-21, 322-39).

Regarding the allegation that the Appeals Council failed to make a specific finding as to Claimant's alleged memory impairment, the Appeals Council acknowledged Claimant's "memory deficits" and accommodated this restriction by finding Claimant had moderate limitations in maintaining concentration, persistence and pace - a finding in accord with that of Dr. Cruise as detailed above. (R. 5). To the extent Claimant argues that the Appeals Council should have identified the memory deficit as a "severe impairment," Claimant's argument is without merit. The Commissioner's failure to make an explicit finding is not reversible error where the Commissioner finds, as he did here, that the claimant has a severe impairment or combination of impairments and considers the omitted impairments at later steps in the sequential evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893,

at *6, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps).

Although Claimant may disagree with the ultimate determination made by the ALJ, the role of this Court is not to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the ALJ. *Craig*, 76 F.3d at 589. Yet, Claimant's argument to reevaluate the Appeals Council's finding that Claimant does not suffer from organic brain syndrome is nothing more than an appeal for the Court to impermissibly substitute its judgment for that of the Commissioner. It is readily apparent that the record contains sufficient medical and non-medical evidence upon which the Appeals Council based its determination regarding Claimant's impairments. Dr. Puente is the only medical source of record who found Claimant suffered from organic brain syndrome, a diagnosis based, at least in part, on the false premise that Claimant experienced poisoning as a child. (R. 7). Claimant cites to no other evidence in the record establishing Claimant's alleged organic brain syndrome or alleged childhood poisoning and the Court has found none. Accordingly, the Appeals Council properly dismissed Dr. Puente's diagnosis of organic brain syndrome. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

**II. The Appeals Council made sufficient findings to permit judicial review as to whether Claimant's impairments meet a listing.**

Claimant contends the Appeals Council erred by not considering whether Claimant's memory impairment and cognitive deficits met the severity requirement of Listing 12.02, the listing for organic mental disorders. Pl.'s Mem. at 11.

To be disabled under the listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); *see also* 20 C.F.R. § 416.926. An impairment meets a listing if it satisfies all the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (explaining "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Even if an impairment does not meet the criteria of a listing, it can medically equal the criteria of a listing. 20 C.F.R. § 416.925(c)(5). To establish medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "The [Commissioner] . . . is responsible for deciding . . . whether a listing is met or equaled." Soc. Sec. Ruling ("S.S.R.") 96-6p, 1996 SSR LEXIS 3, at *7, 1996 WL 374180, at *3.

A claimant alleging disability under Listing 12.02 must establish two elements. First, a claimant must show the existence of one of seven alternative cognitive or affective conditions, including the following alleged by Claimant: (1) Listing 12.02(A)(2) - "Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past)" and (2) Listing 12.02(A)(7) - "Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall

impairment index clearly within the severely impaired range on neuropsychological testing. . . ."[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(A)(2), (7). Pl.'s Mem. at 13. Second, a claimant must establish that his memory impairment has resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(B). Here, Claimant argues he has satisfied the first, second and third of these alternative limitations and accordingly faults the Appeals Council for failing to consider Listing 12.02.

The Appeals Co uncil found that Claimant suffers from "memory deficits," but it is unclear whether the Appeals Council found memory loss to such a degree as to satisfy Listing 12.02. Indeed, it is unclear whether the evidence would support such a finding. The listing requires an "inability" to learn or recall, and both Dr. Campbell and Dr. Cruise found that Claimant, though impaired, retains some such ability. *See* (R. 321) [DE-26] (finding Claimant "has adequate short-term auditory memory); (R. 325) [DE-27] (finding Claimant is "able to understand and remember simple instructions"). The Appeals Council discussed also Claimant's IQ scores from 1991, 1993, 1997 and 2006, which do not indicate a loss of measured intellectual ability of at least 15 IQ points. (R. 6-7, 32, 37, 146-48). To the contrary, the scores have been generally consistent overtime. Moreover, the evidence of record fails to demonstrate that Claimant has an "overall impairment index within the severely impaired range on

---

[4] Claimant's discussion of Listing 12.02(A)(7) (loss of measured intellectual ability) is limited to one sentence appearing in Claimant's argument regarding the severity of his impairments. *See* Pl.'s Mem. at 11 (stating "claimant has both memory impairments and cognitive impairments such that he quite easily meets criteria in A2 and A7 in Listing 12.02 organic brain syndrome).

Case 7:09-cv-00137-FL   Document 32   Filed 04/09/10   Page 12 of 22

neuropsychological testing." In fact, Dr. Campbell found that Claimant tested consistently in the borderline range of intellectual activity and Dr. Puente opined that "neurological tests indicate that [Claimant] is functioning on the surface within normal limits." (R. 32, 321).

Even assuming Claimant satisfies the first element of Listing 12.02, he has not satisfied the second element. The Appeals Council found that as a result of Claimant's mental impairment, he experiences a *mild* degree of limitation in activities of daily living, a *moderate* degree of limitation in maintaining social functioning and a *moderate* degree of limitation in maintaining concentration, persistence or pace. (R. 5) (emphasis added). The Appeals Council's finding is in accord with that of Dr. Cruise, who concluded that Claimant had no more than moderate restrictions for any specified mental task. (R. 324-25, 337) [DE-27]. To the extent Claimant relies on Dr. Puente's opinion that Claimant suffers from organic brain syndrome, this Court has already found that the Appeals Council's decision to accept the conclusions of Drs. Campbell and Cruise over those of Dr. Puente is supported by substantial evidence. *See* S.S.R. 96-6p, 1996 SSR LEXIS 3, at *8, 1996 WL 374180, at *3 (explaining the opinions of state agency consultants may be received into evidence by the ALJ as expert opinion evidence and given appropriate weight on the issue of whether a claimant's impairments equal a listing); *see also Dolan v. Barnhart*, No. 2:03-0208, 2005 WL 5865347, at *14 (S.D. W. Va. Dec. 7, 2005) (explaining findings on state agency forms supported the ALJ's finding that a listing was not met or equaled).

Claimant notes correctly that the Appeals Council did not identify the specific listings considered in making its step-three finding in the disability evaluation process. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding the ALJ should identify the relevant listed

impairment and compare the criteria of each to the medical evidence). However, meaningful judicial review may be possible, in the absence of an exhaustive step three analysis, where the adjudicator "discusses in detail the evidence presented and adequately explains his consideration thereof." *Johnson v. Astrue*, No. 5:08-CV-515-FL, 2009 U.S. Dist. LEXIS 104465, at *6, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (collecting cases). Here, the Appeals Council acknowledged Claimant's alleged organic brain syndrome and associated memory deficits, "discussed the evidence in detail and amply explained the reasoning which supported [its] determination." *Id.* (citing *Russel v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (per curiam) (unpublished table decision). Accordingly, Claimant's argument is without merit.

## III. The Appeals Council properly relied upon the opinions of state agency consultants.

Claimant contends the Appeals Council improperly relied upon the opinion of Dr. Campbell, classified by Claimant as a "non-examining physician." Pl.'s Mem. at 15. In particular, Claimant contends "our Court has long held that the opinion of a non-examining physician is not substantial evidence."[5] *Id.*

---

[5] Despite Claimant's contention to the contrary, the Court notes Dr. Campbell examined Claimant on 20 April 2006 and thus qualifies as a non-treating examining medical source. (R. 319-21) [DE-27]. The Court notes further that Claimant misstates the holding of Fourth Circuit law, which provides that "a non-examining physician's opinion cannot, *by itself,* serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citation omitted) (emphasis added). Moreover, in appropriate circumstances, the Appeals Council may afford great weight to non-examining state agency opinions. *See* S.S.R. 96-6p, 1996 SSR LEXIS 3, at *6, 1996 WL 374180, at *3 (explaining "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to *greater weight than the opinions of treating or examining sources*) (emphasis added). Furthermore, "if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted).

"Findings of fact made by State agency . . . program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review." *See* S.S.R. 96-6p, 1996 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.;" accordingly, their opinions must be considered. *Id.*; *see also* 20 C.F.R. § 416.927(d).

The Appeals Council was justified in relying on the opinion of Dr. Campbell. (R. 5). Dr. Campbell's opinion was consistent with the objective results of Claimant's neurological tests, which indicate he functions within normal limits, and Claimant's IQ scores, which suggest that he experiences borderline intellectual functioning. (R. 6, 32, 354). Furthermore, Dr. Campbell's opinion is consistent with that of Dr. Cruise, a non-examining state agency consultant, who concluded Claimant was capable of understanding and remembering simple instructions and carrying out two-step commands, performing at a consistent pace without unreasonable breaks, interacting appropriately with supervisors and coworkers and responding appropriately to changes in the work setting. (R. 325) [DE-27].

Nevertheless, Claimant, noting Dr. Campbell is a licensed psychologist while Dr. Puente is a licensed neuropsychologist, suggests the Appeals Counsel erred in relying on Dr. Campbell's opinion over that of Dr. Puente. Pl.'s Mem. at 16. When deciding the weight to accord any medical opinion, the adjudicator must weigh the opinion pursuant to the following factors: (1) whether the medical source examined the claimant; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20

C.F.R. § 416.927(d)(1)-(6). Here, the record contains no evidence from a treating physician; accordingly, the Appeals Council's review was limited to that of examining and non-examining consultants. Both Dr. Campbell and Dr. Puente are non-treating examining medical sources and as the Appeals Council's decision indicates, Claimant was examined once by Dr. Campbell in April 2006 while Dr. Puente examined Claimant on three separate occasions (August 1993, May 2006 and June 2006). (R. 5-6).

However, as discussed at length above, the Appeals Council noted "Dr. Puente's opinion in (sic) not consistent with the record as a whole because it is based on a false premise that the claimant experienced poisoning as a child which caused organic brain damage." (R. 7). The Appeals Council noted further that Dr. Puente's records contained an internal inconsistency with respect to Claimant's numerous IQ test results. In his supplemental declaration dated 15 May 2008, Dr. Puente opined that some learning occurs in individuals who have repeatedly taken IQ tests, as Claimant has; thus, earlier test scores may be more reliable than later scores. (R. 353-54 ¶ 4). Accordingly, Dr. Puente concluded that Claimant's IQ results from February 1997 (verbal IQ of 73, performance IQ of 64 and full scale IQ of 68) were more accurate than IQ scores revealed during Dr. Puente's testing of Claimant in June 2006 (verbal IQ of 76, performance IQ of 79, full scale IQ of 76). The Appeals Council observed, however, that "[u]nder Dr. Puente's theory . . . ., the most reliable IQ scores would be those obtained in 1991 [verbal IQ 84, performance IQ of 71, full scale of 76], and not those obtained . . . on February 4, 1997." Accordingly, the Appeals Council concluded that "Dr. Puente's opinion is also based on IQ scores which are significantly lower than earlier and thus more reliable IQ scores."

16

The consideration of the 20 C.F.R. § 416.927(d) factors ultimately convinced the Appeals Council to accord decreased weight to Dr. Puente's opinion, as the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded its true evidentiary value. In contrast, Dr. Campbell's opinion is supported and consistent with the record as whole. Accordingly, the Appeals Council's reliance on Dr. Campbell's opinion was not error.

## IV. The Appeals Council met its burden of proving that Claimant could perform other work.

Claimant contends first that the Appeals Council may not rely on VE testimony regarding "representative occupations" but rather is required to show that specific jobs exist in the national economy that a claimant can perform. Pl.'s Mem. at 17. Claimant alleges further that "even if it is determine (sic) that the ALJ specifically found that [Claimant] retained the capacity to do the specific job of grocery bagger," this position requires a reasoning level exceeding Claimant's RFC. *Id.* at 18. Finally, Claimant argues that the Appeals Council improperly ignored the VE's testimony. *Id.* at 19.

With respect to Claimant's challenge of the Appeals Council's finding that Claimant is capable of performing the requirements of *representative occupations* (such as grocery bagger, laundry worker and bander), Claimant's argument is without merit.[6] The Social Security Act

---

[6] Claimant cites *Lester v. Schweiker*, 683 F.2d 838 (4th Cir. 1982) for the proposition that "the Commissioner must show that a claimant can perform specific jobs that exists (sic) in the national economy." Pl.'s Mem. at 17. Contrary to Claimant's contention, however, the *Schweiker* court did not find the ALJ's decision deficient because the ALJ relied on VE testimony as to representative occupations the claimant could perform. In *Schweiker*, the VE testified as to representative occupations the claimant could perform based on the hypothetical presented by the ALJ. *Schweiker*, 683 F.2d at 843. The court found, however, that substantial evidence did not support the ALJ's finding that the claimant could perform the jobs suggested by the VE because (1) the ALJ's RFC, upon which the hypothetical was based, was not supported by substantial evidence; and (2) no

17

provides that the Commissioner need only show that a claimant can engage in "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or *whether a specific job vacancy exists for him*, or whether he would be hired if he applied for work." 42 U.S.C. 1382c(a)(3)(B) (emphasis added); *see also Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981) (explaining the Commissioner's step-five burden includes showing that a claimant can perform an alternative job and "that this specific *type* of job exists in the national economy) (emphasis added) (citing *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976)).

In this case, the VE testified that a hypothetical individual the same age as Claimant and with his educational background, including some special education instruction, could perform unskilled work existing in the national economy. Consistent with the Dictionary of Occupational Titles, the VE provided, and the Appeals Council acknowledged, that examples of such positions included grocery bagger, laundry worker and bander. *See* S.S.R. 00-4p, 2000 SSR LEXIS 8, at *4, 2000 WL 1898704, at *2 (explaining the ALJ must "inquire, on the record, as to whether or not" the "[o]ccupational evidence provided by a VE" is "consistent with the occupational information supplied by the DOT"); *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (explaining the ALJ's duty to develop the record includes "[q]uestioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations."). Accordingly, the Appeals

substantial evidence existed to prove that the claimant possessed the vocational qualifications to perform the representative positions, given the claimant's age, education and work experience. *Id.* Accordingly, the VE's testimony was based on a faulty hypothetical and thus could not constitute substantial evidence. *See Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992) ( "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." ).

Council did not err in relying on the VE's testimony regarding representative occupations. *See e.g.*, *Matthewson v. Astrue*, No. 4:06-CV-248-FL, 2008 U.S. Dist. LEXIS 4941, at *14, 2008 WL 183278, at *5 (E.D.N.C. Jan. 18, 2008) (finding the VE's testimony as to representative occupations claimant could perform constituted substantial evidence); *Haynes v. Astrue*, No. 4:07-CV-43, 2008 U.S. Dist. LEXIS 94900, at *5, 14, 2008 WL 5047665, at *2, 5 (W.D. Va. Nov. 21, 2008) (same); *Dominguez-Herrera v. Astrue*, 334 Fed. Appx. 651, 654 (5th Cir. June 22, 2009) (noting the ALJ properly relied on the VE's testimony regarding representative occupations).

Next, Claimant contends that he cannot perform the job of "grocery bagger" because it requires a reasoning level of 2 and a mathematic level of 1.[7] Pl.'s Mem. at 18. The DOT specifies the General Educational Development[8] requirements required for each job, including the level of reasoning and mathematical skills. A job rated at a reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C § III, 1991 WL 688702; *see Burnette v. Astrue*, No. 2:08-CV-009-FL, 2009 U.S. Dist. LEXIS 24656, at *17, 2009 WL 863372, at *5 (E.D.N.C. Mar. 24, 2009) (holding that an "ALJ's limitation of [claimant] to 'simple routine repetitive tasks' is not inconsistent with jobs at the DOT reasoning development level 2"); *see generally Charles v. Astrue*, No. 07-1172, 2008 U.S. Dist. LEXIS 68597, at *12, 2008 WL 4003651, at *4 (W.D. La.

---

[7] While not challenged by Claimant, the position of laundry worker requires the same reasoning and math levels as the grocery bagger job. DOT, Laundry Worker I, 361.684-014.

[8] "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, App. C § III, 1991 WL 688702.

Aug. 7, 2008) (collecting cases holding reasoning level 2 is consistent with an RFC to perform simple, routine tasks). A job rated at mathematical level of 1 requires the ability to

> [a]dd and subtract two digit numbers, [m]ultiply and divide 10's and 100's by 2, 3, 4, 5, [p]erform the four basic arithmetic operations with coins as part of a dollar [and] [p]erform operations with units such as cup, pint, and quart; inch, foot and yard; and ounce and pound.

*Id.* Claimant contends Dr. Campbell's findings that Claimant performs on a fourth grade level with respect to reading and arithmetic, was reliant on his fingers in performing multiplication and was unable to divide are evidence of Claimant's inability to perform the grocery bagger position. *Id.*; (R. 320). Claimant concludes, therefore, that "[w]ithout resolving these contradictions, the Commissioner cannot be deemed to have met his burden of proof." However, Dr. Campbell also found that Claimant can perform basic math fairly quickly and accurately, had academic skills which are "likely enough to function in daily living," can understand and perform routine tasks and despite difficulty with complex instructions during the examination, did calmly. (R. 320-21). As noted earlier, Dr. Campbell's findings were in accord with those of Dr. Cruise, who found Claimant capable of performing simple, routine and repetitive tasks. Finally, Dr. Puente noted that Claimant "can add, subtract and multiply and divide single digits without much difficulty." (R. 34). Accordingly, substantial evidence supports the Appeals Council's finding that Claimant can perform the representative position of grocery bagger.[9]

---

[9] Even assuming the Claimant could not perform the positions of grocery bagger or laundry room worker due to a reasoning level of 2, the Court notes that the third representative occupation, bander, requires a reasoning level of 1. DOT, Bander, Hand (paper goods), 920.687-026. As the court in *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) explained, "[a] reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required." Given the VE identified a representative occupation existing in significant numbers (bander-light duty, 7,390 locally, 183,980 nationally (R. 133-34)) that Claimant can perform, the VE's testimony would nevertheless provide substantial

Finally, Claimant contends the Appeals Council improperly ignored the VE's testimony that Claimant would not be able to perform any work if he had a concentration deficit resulting in a 25% productivity loss. Pl.'s Mem. at 29. The purpose of a VE is "to assist the ALJ in determining whether there is wo rk available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set fo rth all of a claimant's physical and mental impairments. *Id.* However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

In this case, the ALJ posed three hypothetical questions to the VE, one of which included an assumption that the individual suffered from a concentration deficit resulting in a loss of productivity of 25 percent. (R. 134) [DE-19]. Claimant argues only that the ALJ "was not free to ignore that answer." However, neither the ALJ nor the Appeals Council ultimately found that Claimant exhibited such a productivity loss. The Appeals Council's a finding is consistent with

---

evidence for the Appeals Council's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis).

Dr. Cruise's opinion that Claimant is capable of maintaining attention and concentration for at least a 2-hour period at a time, carrying out short and simple instructions, adhering to work attendance and scheduling policies and performing at a consistent pace without unreasonable breaks and Dr. Campbell's opinion that Claimant has adequate short-term auditory memory skills and can perform routine tasks in a consistent manner and pace. (R. 321, 325). Accordingly, the Appeals Council appropriately determined that Claimant could perform unskilled work at any level of physical exertion. In turn, the Appeals Council properly relied on the VE's testimony that a hypothetical individual with Claimant's educational background could perform unskilled work existing in significant numbers in the national economy. Accordingly, Claimant's argument is without merit.

### CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 9th day of April, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge

22